UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Anibal Arroyo,

Petitioner,

**MEMORANDUM & ORDER**
24-CV-01356 (DG)

-against-

District Attorney, Queens County and
Ian Ramae, Esq., Assistant District Attorney,

Respondents.
---------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

By Petition timely filed on January 29, 2024, *pro se* Petitioner Anibal Arroyo, then incarcerated at Shawangunk Correctional Facility, commenced this action pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York, challenging his 2019 conviction in the Supreme Court of the State of New York, County of Queens (the "Queens County Supreme Court") of robbery in the first degree and robbery in the second degree following a bench trial, which conviction was affirmed by the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Appellate Division"). *See* Petition ("Pet."), ECF No. 1.[1] The action subsequently was transferred to the United States District Court for the Eastern District of New York. *See* ECF No. 3; *see generally* docket.

In the Petition – which the Court liberally construes in light of Petitioner's *pro se* status,

---

[1] Under the "prison mailbox rule," the operative filing date is the date on which the Petition was delivered to prison officials for forwarding to the court. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001). Here, Petitioner does not indicate the date on which he delivered the Petition to prison officials. *See generally* Pet. The Petition was received by the United States District Court for the Southern District of New York on January 29, 2024.

Petitioner does not appear to challenge his conviction of criminal possession of stolen property in the fifth degree.

*see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) – Petitioner challenges the sufficiency of the evidence against him. More specifically, Petitioner asserts, in summary and substance: (1) that the evidence was legally insufficient to support his conviction of robbery in the first degree because the evidence that he possessed a "dangerous instrument" was insufficient; and (2) that the evidence was legally insufficient to support his conviction of robbery in the second degree because the evidence that the victim sustained a "physical injury" was insufficient. *See generally* Pet.; *see also* ECF No. 12 (Petitioner's February 13, 2025 letter). As discussed further below, on direct appeal of his conviction, Petitioner – then represented by counsel – unsuccessfully asserted the same two challenges to the sufficiency of the evidence. *See* Pet. at 2.[2]

Respondents oppose the Petition. *See* Answer, ECF No. 10; Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Br."), ECF No. 10-1. Respondents argue, in summary and substance, that Petitioner's sufficiency claim lacks merit "because the Appellate Division reasonably applied clearly established Supreme Court law in rejecting petitioner's claim on appeal." *See* Resp. Br. at 2.[3]

For the reasons set forth below, the Petition is DENIED.

---

[2] When citing to the Petition, the Court refers to the page numbers generated by the Court's electronic case filing system ("ECF").

[3] Respondents also argue that "[t]o the extent that petitioner challenges his conviction as against the weight of the evidence, that claim is a matter [of] state law only and is not cognizable on habeas corpus review." *See* Resp. Br. at 16-17 (collecting cases). Petitioner does not, however, appear to bring any such challenge in the instant Petition. In any event, for the reason set forth by Respondents, any such challenge would be unavailing here.

## BACKGROUND

### I. The State Court Indictment

On October 18, 2018, Petitioner was charged in a three-count Indictment with: (1) robbery in the first degree, in violation of New York Penal Law § 160.15(3); (2) robbery in the second degree, in violation of New York Penal Law § 160.10(2)(a); and (3) criminal possession of stolen property in the fifth degree, in violation of New York Penal Law § 165.40. *See People v. Arroyo*, Indictment No. 2164/2018 (N.Y. Sup. Ct.).[4]

### II. The Trial

A bench trial – at which Petitioner was represented by counsel – was held in August 2019 before the Honorable Daniel Lewis. *See generally* Transcripts of Proceedings ("Tr."), ECF No. 11-1.[5]

Opening statements were delivered on August 22, 2019. *See* Tr. 29, 32-41. In previewing for Justice Lewis what the People intended to prove at trial, the People set forth, in substance, that the evidence would demonstrate that on September 5, 2018 in Queens County, Petitioner robbed Luis Portillo (who was unknown to Petitioner) of his cellphone; that in the course of the robbery, Mr. Portillo sustained an injury to his elbow; that immediately following the robbery, Mr. Portillo gave chase; that during the chase, Petitioner displayed – and threatened Mr. Portillo with – a knife, causing Mr. Portillo to end the chase; and that through tracking of the cellphone, Petitioner and the cellphone were located the following day (with the cellphone being on Petitioner's person). The People previewed that Justice Lewis would hear testimony of Mr.

---

4 The Court takes judicial notice of the Indictment.

5 The Court has considered the entirety of the trial transcript – which is contained in the Transcripts of Proceedings – and assumes familiarity with the trial transcript herein. When citing to the Transcripts of Proceedings, the Court uses the ECF-generated page numbers.

Portillo, of a bystander who called 911, of an NYPD officer, and of an NYPD detective; would see pictures – including of Mr. Portillo's injury; and would see video – including of Petitioner in the minutes prior to the robbery and in the minutes following the robbery. In her opening statement, Petitioner's trial counsel asserted, in substance, that there was no credible evidence that Petitioner possessed a dangerous instrument – *i.e.*, the knife that the People had referenced in the People's opening statement – and no credible evidence of a physical injury and therefore, the People could not prove beyond a reasonable doubt robbery in the first degree or robbery in the second degree.

Following opening statements, the People presented the People's case, calling four witnesses and offering a variety of other evidence, including photographic and video evidence.

Mr. Portillo testified about the robbery itself; about giving chase after the robbery; about the injury he sustained; about his interactions with the police in connection with the robbery; about the efforts he and the police made to get his cellphone back the day after the robbery; and about the apprehension of Petitioner the day after the robbery. *See* Tr. 42-132.

As to the robbery itself and as particularly relevant here, Mr. Portillo testified that he was walking from his house in Queens to his gym at approximately 4:30 p.m. on September 5, 2018 when he was approached by Petitioner, who asked for money; that Mr. Portillo told Petitioner that Mr. Portillo had no cash and kept walking; that shortly thereafter, Petitioner approached Mr. Portillo again and asked to use his cellphone to make a call; that Mr. Portillo told Petitioner that he would help Petitioner make the phone call – by dialing the phone number Petitioner gave him, putting the phone on speaker, and holding it while Petitioner spoke; that Petitioner agreed but as soon as the phone call was answered, Petitioner "grabbed [Mr. Portillo's] phone," said "I'm not going to take it," but "kept pulling back" and "wasn't letting go;" that Mr. Portillo was "[t]rying

to take it back" but Petitioner "was able to snatch the phone" and "put it in his pocket;" that Mr. Portillo "didn't want [Petitioner] to get away so [Mr. Portillo] grabbed [Petitioner] from his shirt;" that after that, Mr. Portillo "thought to [himself] to throw [Petitioner] on the ground for where he won't get away and just somehow get [Mr. Portillo's] phone from him;" that Mr. Portillo fell to the ground – on the sidewalk – with Petitioner; that Mr. Portillo "fell directly on [his] elbow and [Mr. Portillo] hit the concrete floor;" that Mr. Portillo was wearing short sleeves at the time and "felt pain right away from that fall;" that Petitioner got up first and started to run; and that Mr. Portillo got up and started to chase Petitioner and screamed out for help.

As to the chase itself and as particularly relevant here, Mr. Portillo testified that he chased Petitioner for approximately ten minutes and that he was not able to catch up with Petitioner because Mr. Portillo has a hip disability – indeed, he "ha[s] a visible limp" – and is "a slow[er] runner than most." As to how the chase came to an end, Mr. Portillo testified as follows: "So, when it came to an end, the way it happened was, he stopped, turned around and said, I'm going to cut you. He pulled a knife from his pocket and he said, I'm going to cut you if you keep chasing me." Mr. Portillo described the knife as having a "blue base." When asked how he knew that the item that Petitioner had pulled from his pocket was a knife, Mr. Portillo answered: "He threatened me and I saw a blue base. I saw a silver, like a metal part of it, from the base. From the blue base and top of it was metal, like silver." Mr. Portillo testified that he was scared and "backed away" and "just let [Petitioner] be."

As to his interactions with the police in connection with the robbery and the efforts he and the police made to get the cellphone back the day after the robbery and as particularly relevant here, Mr. Portillo described that after calling off the chase, he approached police officers in a parked police car, showed them his elbow "which was already bleeding," and told them he

had just gotten robbed; that he and the officers then searched for Petitioner but did not find him; that they then went back to the place where Mr. Portillo was robbed, that there were other officers there, and that Mr. Portillo was able to retrieve his bookbag, which he had left on the ground when he began to give chase; that ultimately, Mr. Portillo was taken to a police precinct; and that immediately upon leaving the precinct for the night, Mr. Portillo went to CVS, where he purchased Neosporin and a bandage for his elbow, which "was bleeding" and "in pain," and then went home and treated the wound to his elbow, which "stinged" and "was in pain."[6] Mr. Portillo testified that prior to being taken to the precinct, officers had offered to get him a Band-Aid but that he had declined at that time.[7]

As to the ultimate retrieval of his cellphone and the apprehension of Petitioner on September 6, 2018, Mr. Portillo described how he was able to track the location of his cellphone; how he went with detectives to certain places where the phone appeared to be located at various times; and how the phone ultimately was located on Petitioner's person outside a hospital in Manhattan.

As to the nature and extent of the injury he sustained when he fell to the sidewalk with Petitioner on September 5, 2018, Mr. Portillo testified that "[i]t took a month to recover" and that during that month, his elbow "was just in pain" but otherwise "didn't affect [him] really" and that at the time of trial, his arm was "fine" but that there was "a small scar" on his elbow, which Mr. Portillo showed to Justice Lewis.

---

[6] Mr. Portillo explained that he and two detectives left the precinct at one point to go to an AT&T store to find out if AT&T could help track his cellphone, were at the AT&T store for less than five minutes, and then went back to the precinct.

[7] Mr. Portillo's testimony reflected that he did not know the precinct designation of every officer with whom he interacted on September 5, 2018.

NYPD Officer Jonathan Gaby – who encountered Mr. Portillo on September 5, 2018 after Mr. Portillo had returned to the area of the robbery and who was one of the officers who ultimately dropped Mr. Portillo off at the 115th Precinct – testified about his observations of Mr. Portillo and about doing a canvass of the area with Mr. Portillo before dropping him off at the precinct. *See* Tr. 135-75.[8] Officer Gaby testified that when he encountered Mr. Portillo, Mr. Portillo's right elbow was cut and "still bleeding" and that Mr. Portillo "seem[ed] a little bit out of breath." Officer Gaby testified that Mr. Portillo refused medical attention at the scene – that Mr. Portillo was more concerned at that time about finding the person who had taken his cellphone. As to the canvass, Officer Gaby testified that he was looking for a cellphone and "[a] knife, possible knife."

NYPD Detective Carmelo Stracuzzi – who was one of the detectives with whom Mr. Portillo met at the 115th Precinct on the day of the robbery and again on the day after the robbery – testified about his observations of Mr. Portillo on the day of the robbery, about tracking the cellphone with Mr. Portillo the day after the robbery, about locating the cellphone on Petitioner, about apprehending Petitioner, about the statement Petitioner made upon his apprehension, and about a video canvass that Detective Stracuzzi conducted. *See* Tr. 175-215. Detective Stracuzzi testified that on the day of the robbery, Mr. Portillo was "very nervous," had "an injury on his elbow," and told Detective Stracuzzi that a knife had been displayed; that on the day after the robbery, the location of the cellphone was tracked to outside a hospital in Manhattan, and that the cellphone was in Petitioner's pocket; that with the cellphone were other

---

[8] Officer Gaby explained that there were officers from both the 110th and 115th Precincts present when Officer Gaby first encountered Mr. Portillo and Officer Gaby explained that the "job" – *i.e.*, to respond to the report of the robbery – initially was assigned to the 110th Precinct but shortly thereafter was transferred to the 115th Precinct, because of "geographical location."

of Mr. Portillo's belongings (which had been with the cellphone); and that when apprehended, Petitioner claimed: "[T]he kid let me use the phone. I was going to give it back. I was going to put it in his mailbox."

Nicholas Tene – a bystander who was present while the robbery was taking place and who called 911 – testified about what he saw at the time of the robbery and about his 911 call. *See* Tr. 223-44.

Photographs of the scene of the robbery and of Mr. Portillo's injured elbow and videos of Petitioner both shortly before and shortly after the robbery were admitted into evidence.

After the People rested, Petitioner moved to dismiss Count One (robbery in the first degree), arguing that the People had not proven a *prima facie* case because the People "ha[d] not proven that during the course of the alleged incident that [Petitioner] had actual possession of a knife," and to dismiss Count Two (robbery in the second degree), arguing that the People "ha[d] not proven the element of physical injury, substantial pain or physical impairment." *See* Tr. 245-49. The People opposed the motion to dismiss, arguing that "[i]n the light most favorable to the People, the People have submitted substantial amount of evidence to easily meet that burden of going forward to the fact finder and meeting each and every element of the offenses charged on the indictment." *See* Tr. 249-52 (discussing evidence regarding knife and regarding injury). Justice Lewis denied the motion to dismiss, stating: "The issue at this stage is whether or not there is sufficient evidence to allow a trier of the fact to actually consider the charges that have been filed. Under these circumstances, in the light most favorable to the People, the Court finds there are." *See* Tr. 252.

Following Justice Lewis's denial of the motion to dismiss, Petitioner confirmed that he would not be presenting any testimony; Petitioner again moved for dismissal of Counts One and

Two; and Justice Lewis again denied Petitioner's motion to dismiss. *See* Tr. 252-54. Thereafter, discussion was held regarding the charges and Justice Lewis granted Petitioner's request for lesser included charges (robbery in the third degree, grand larceny, and petit larceny). *See* Tr. 254, 257-58. Summations followed. *See* Tr. 259-302.

In her summation, counsel for Petitioner argued that the evidence was insufficient on Counts One and Two, attacking Mr. Portillo's credibility and the police investigation and pointing to certain inconsistencies in the evidence. As with her opening statement, counsel for Petitioner principally focused in summation on two issues: (1) possession of a "dangerous instrument" and (2) "physical injury." More specifically, counsel argued that Mr. Portillo's testimony about Petitioner having a knife was both incredible and uncorroborated and argued that Mr. Portillo's testimony about the extent of his injury was incredible. In the People's summation, the People marshaled the People's evidence, including as to the knife and as to Mr. Portillo's injury, asserting, *inter alia*, that "the victim's testimony was reasonable, consistent, corroborated, therefore credible and truthful." The People argued that the victim "suffered an abrasion and a cut to his arm because of [Petitioner's] actions," "got bandages and Neosporin" to treat it, "that it hurt for approximately thirty days," and that the victim "has a scar from it," noting "[t]his wound is not insignificant," and the People argued that "[f]rom the very beginning, [Mr. Portillo] said 'knife', and in court he gave the best description . . . that he could of it."

On August 30, 2019, Justice Lewis found Petitioner guilty on Counts One, Two, and Three of the Indictment. *See* Tr. 305-08. As particularly relevant here, as to Count One, Justice Lewis found that "notwithstanding questions raised by the defense as to whether or not there was adequate proof of a dangerous instrument," the People "did sustain their burden of proof beyond a reasonable doubt" and as to Count Two, Justice Lewis "note[d] that counsel did make very

good arguments with respect to the injuries resulted to Mr. Portillo" but – pointing to certain evidence, including a photograph and the scar that had been shown in court – found that "proof has been done to establish proof beyond a reasonable doubt that the defendant's guilty of that count as well."

## III. Sentencing

On November 8, 2019, Justice Lewis sentenced Petitioner on each of Counts One and Two to a term of imprisonment of ten years and five years of post-release supervision and sentenced Petitioner on Count Three to a term of imprisonment of one year, with the sentences to run concurrently. *See* Tr. 310, 321-26.[9]

## IV. Petitioner's State Court Appeal

Petitioner – represented by counsel – appealed the judgment of conviction to the Appellate Division. *See* State Court Record ("S.R.") 1-31 (Petitioner's brief on appeal and exhibits thereto), ECF No. 11. On appeal, Petitioner argued that "the People failed to prove both (A) that the item [Petitioner] allegedly displayed, with a 'blue base' and 'metal part,' seen by [Mr. Portillo] for a 'few seconds' from 12-feet away, was actually a dangerous instrument, and (B) that [Mr. Portillo's] minor elbow scrape constituted a physical injury" and Petitioner principally requested that his conviction "be reduced to one count of third-degree robbery and remanded for resentencing." More specifically, Petitioner argued that Mr. Portillo's testimony going to the issue of "dangerous instrument" – *i.e.*, that Petitioner possessed a knife – was "suspect" and, in any event, insufficient and that because no one else saw a knife and no knife was ever recovered, "there was no other evidence to compensate for Portillo's vague and

---

[9] Prior to imposing sentence, Justice Lewis arraigned Petitioner on a predicate statement and also marked off the calendar a *pro se* motion to set aside the verdict, which motion had not been adopted by counsel for Petitioner.

insufficient description of the object" and Petitioner argued that the evidence did not establish beyond a reasonable doubt that Mr. Portillo suffered "physical injury" – *i.e.*, either "impairment of physical condition" or "substantial pain" – and that Justice Lewis's "reliance on the photographs of the injury and Portillo's visible scar was misplaced."

The People opposed Petitioner's appeal, arguing that the People proved beyond a reasonable doubt that Petitioner wielded a dangerous instrument and that Mr. Portillo sustained a physical injury – asserting that "the evidence adduced at trial was legally sufficient and compelling on both of these points" and pointing to Mr. Portillo's testimony as to both issues. *See* S.R. 32-63 (People's brief on appeal).

By Decision & Order dated December 7, 2022, the Appellate Division affirmed the November 8, 2019 judgment of the Queens County Supreme Court convicting Petitioner of robbery in the first degree, robbery in the second degree, and criminal possession of stolen property in the fifth degree. *See People v. Arroyo*, 177 N.Y.S.3d 916 (2d Dep't 2022). In so doing, the Appellate Division stated:

> Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of robbery in the first degree and robbery in the second degree beyond a reasonable doubt. Contrary to the defendant's contention, the evidence adduced at trial was legally sufficient to establish that the knife that the defendant threatened to cut the complainant with constituted a "dangerous instrument" within the meaning of Penal Law § 10.00(13). The evidence was also legally sufficient to demonstrate a "physical injury" within the meaning of Penal Law § 10.00(9). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence, we nevertheless accord great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor. Upon review of the record here, we are satisfied that the verdict of guilt as to those crimes was not against the weight of the evidence.

*See id.* at 916-17 (citations omitted) (citing various New York state cases and statutory

provisions).[10]

By letter dated January 5, 2023, Petitioner sought leave to appeal the Appellate Division's December 7, 2022 Decision & Order to the New York Court of Appeals (the "Court of Appeals"). *See* S.R. 67-68. Petitioner thereafter submitted a supplemental letter dated January 31, 2023 in support of his request for leave. *See* S.R. 69-72 (arguing that "[t]his case presents an opportunity for [the Court of Appeals] to consider whether, as a matter of law, the presence of a small scar is sufficient to satisfy the definition of physical injury under Penal Law § 10.00(9)" and that Petitioner should also be granted leave on the issue of whether the People "failed to prove that the item [Petitioner] displayed was actually a dangerous instrument").

By letter dated February 10, 2023, the People opposed Petitioner's application for leave to appeal. *See* S.R. 73-75 (discussing evidence of "physical injury," noting that "the scarring was just one component of the strong evidence of physical injury in this case;" asserting that the People satisfied the People's burden of proving the "dangerous instrument" element of robbery in the first degree and that "that was not a close question in this case;" and concluding that Petitioner's claims "both involve the application of well-settled law to fact-specific issues, and [Petitioner's] letter fails to identify any novel, leaveworthy question of law of state-wide importance").

By Order dated May 26, 2023, the Court of Appeals denied Petitioner's application for leave to appeal. *See People v. Arroyo*, 39 N.Y.3d 1153 (2023); S.R. 76.

---

[10] The Appellate Division's December 7, 2022 Decision & Order is contained in the record at S.R. 65-66.

## FEDERAL REVIEW OF STATE CONVICTIONS

**AEDPA Generally**

To determine whether a petitioner is entitled to a writ of habeas corpus, a district court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law 'if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law' or the state court 'decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *See Englert v. Lowerre*, 115 F.4th 69, 80 (2d Cir. 2024) (alterations accepted) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)), *cert. denied sub nom. Englert v. Bishop*, 145 S. Ct. 2826 (2025). "A state court decision involves an 'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *See id.* (alteration accepted) (quoting *Williams*, 529 U.S. at 413). Under AEDPA, "clearly established Federal law" refers "only to the holdings of the Supreme Court extant at the time of the relevant state court decision." *See id.* at 81 (quotations omitted);

*see also Williams*, 529 U.S. at 412.

AEDPA's standard is "intentionally difficult to meet." *See Woods v. Donald*, 575 U.S. 312, 316 (2015) (quotation omitted). As the United States Court of Appeals for the Second Circuit has stated:

> This highly deferential standard of review is difficult to meet in that it demands that state-court decisions be given the benefit of the doubt. Thus, under AEDPA, the determinative question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold. In other words, to obtain § 2254 relief, a petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Thus, the existence of reasonable arguments on both sides is all the state needs to prevail in an AEDPA case.

*See Englert*, 115 F.4th at 80-81 (alterations accepted) (quotations and citations omitted).

**<u>Sufficiency of the Evidence</u>**

As relevant here, a claim that the evidence was insufficient to support a state court criminal conviction implicates due process and is cognizable on federal habeas review. *See Jackson v. Virginia*, 443 U.S. 307, 314-21 (1979). Under *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See id.* at 319; *see also Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012). A petitioner bringing a sufficiency claim "bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation omitted).[11]

---

[11] As the Second Circuit has noted, "[w]hen considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." *See Ponnapula*, 297 F.3d at 179 (quotation omitted); *see also Jackson*, 443 U.S. at 324 n.16. In reviewing the evidence, a federal court "'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in

Where a state court has denied a claim of insufficient evidence on the merits, a federal court reviews the claim under a "doubly deferential" standard of review – in that circumstance, a federal court may not grant a writ of habeas corpus unless it concludes that *no* reasonable court could have held that *any* reasonable trier of fact could have read the evidence to establish petitioner's guilt beyond a reasonable doubt. *See Garbutt v. Conway*, 668 F.3d 79, 81-82 (2d Cir. 2012); *Epps*, 687 F.3d at 50 (citing *Garbutt*); *see also Parker v. Matthews*, 567 U.S. 37, 43 (2012) (referencing "twice-deferential standard" and noting that "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable" (quotation omitted)).[12]

**DISCUSSION**

As set forth above, in the Petition, Petitioner challenges the sufficiency of the evidence against him, asserting, in summary and substance: (1) that the evidence was legally insufficient to support his conviction of robbery in the first degree because the evidence that he possessed a "dangerous instrument" was insufficient; and (2) that the evidence was legally insufficient to support his conviction of robbery in the second degree because the evidence that the victim

---

the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

[12] Respondents do not argue that Petitioner failed to exhaust his state court remedies and no party argues that the state court did not adjudicate Petitioner's sufficiency claim on the merits. *See generally* Pet.; Resp. Br.; ECF No. 12; *see also Harrington v. Richter*, 562 U.S. 86, 98-99 (2011) (noting that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary," that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning," and that "as [the United States Supreme Court] has observed, a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d)").

sustained a "physical injury" was insufficient.[13]

For the reasons set forth below, the Petition is DENIED.

## I. Applicable Law

### A. Robbery in the First Degree

New York Penal Law § 160.15 provides in relevant part:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> . . .
>
> 3. Uses or threatens the immediate use of a dangerous instrument . . . .

*See* N.Y. Penal Law § 160.15(3).

New York Penal Law § 10.00(13) provides in relevant part that "dangerous instrument" means "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." *See* N.Y. Penal Law § 10.00(13).

### B. Robbery in the Second Degree

New York Penal Law § 160.10 provides in relevant part:

> A person is guilty of robbery in the second degree when he forcibly steals property and when:
>
> . . .
>
> 2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

---

[13] Petitioner does not appear to assert any challenge to the sufficiency of the evidence with respect to the robbery charges other than as to the "dangerous instrument" and "physical injury" elements. The Court notes for record completeness that even were Petitioner to have raised a sufficiency challenge as to any other element of either robbery charge, the Court's decision to deny the Petition would remain unchanged.

(a) Causes physical injury to any person who is not a participant in the crime . . . .

*See* N.Y. Penal Law § 160.10(2)(a).

New York Penal Law § 10.00(9) provides that "physical injury" means "impairment of physical condition or substantial pain." *See* N.Y. Penal Law § 10.00(9).

**II. The Petition Is Denied**

As set forth above, the relevant inquiry here is whether Petitioner has demonstrated that the adjudication in state court of his claim of insufficiency of the evidence resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). Under the "doubly deferential" standard of review applicable here – in light of the merits-based determination in state court – the Petition must be denied.

On the record here, the Court cannot conclude that the Appellate Division's determination that the evidence "was legally sufficient to establish [Petitioner's] guilt of robbery in the first degree and robbery in the second degree beyond a reasonable doubt," *see Arroyo*, 177 N.Y.S.3d at 916-17, was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. On the record here, the Court cannot "conclude that *no* reasonable court could have held that *any* reasonable [trier of fact] could have read the evidence to establish [Petitioner's] guilt beyond a reasonable doubt." *See Garbutt*, 668 F.3d at 81-82. Here, the record contained ample evidence permitting the Appellate Division to conclude that a reasonable trier of fact could have read the evidence to establish Petitioner's guilt beyond a reasonable doubt as to the

robbery charges.

Petitioner's arguments with respect to the sufficiency of the evidence as to possession of a "dangerous instrument" and as to "physical injury" are unpersuasive and unavailing on the record here. The record evidence, viewed in the light most favorable to the People, amply supported the Appellate Division's determination that the evidence adduced at trial was legally sufficient to establish the "dangerous instrument" and "physical injury" elements. Mr. Portillo's testimony alone is sufficient for the Court to conclude that the Appellate Division's determination that the evidence adduced at trial was legally sufficient as to both elements was not unreasonable.

As to the issue of the "dangerous instrument," as detailed above, Mr. Portillo testified that Petitioner pulled a knife from Petitioner's pocket and told Mr. Portillo that Petitioner was going to cut Mr. Portillo if he kept chasing Petitioner, Mr. Portillo testified that he was scared and backed away, and Mr. Portillo described the knife, including that it had a blue base and "metal, like silver" atop the blue base. Based on this evidence, a rational trier of fact could conclude that the "dangerous instrument" element of robbery in the first degree was proven beyond a reasonable doubt. *See, e.g.*, *People v. Davila*, 830 N.Y.S.2d 117, 118 (1st Dep't 2007) (rejecting sufficiency of evidence challenge as to element of use or threatened immediate use of a dangerous instrument where there was "[c]redible evidence that defendant held a sharp, shiny object to the victim's neck and threatened to kill her if she did not give up her property"); *see also* Resp. Br. at 11-14 (discussing law regarding "dangerous instrument" and citing analogous cases). Here, in light of the evidence from which a rational trier of fact could conclude that the People had proven beyond a reasonable doubt the "dangerous instrument" element of robbery in the first degree, the Court cannot conclude that no reasonable court could have held that "the

evidence adduced at trial was legally sufficient to establish that the knife that the defendant threatened to cut the complainant with constituted a 'dangerous instrument,'" *see Arroyo*, 177 N.Y.S.3d at 916.

As to the issue of "physical injury," as detailed above, Mr. Portillo testified that during the altercation with Petitioner, Mr. Portillo fell directly on his elbow, that he was wearing short sleeves, and that he felt pain right away and Mr. Portillo testified that he was bleeding, that he treated the wound, that it took a month to recover – during which time he was in pain – and that there was a scar on his elbow, which Mr. Portillo showed to Justice Lewis at trial almost a year after the robbery. Based on this evidence, a rational trier of fact could conclude that the "physical injury" element of robbery in the second degree was proven beyond a reasonable doubt. *See, e.g.*, *People v. Williams*, 806 N.Y.S.2d 610, 611 (2d Dep't 2005) (in case involving robbery and assault, noting that victim's "scars alone are impairment sufficient to constitute physical injury" within the meaning of New York Penal Law § 10.00(9) and collecting cases); *see also* Resp. Br. at 14-16 (discussing law regarding "physical injury" and citing analogous cases). Here, in light of the evidence from which a rational trier of fact could conclude that the People had proven beyond a reasonable doubt the "physical injury" element of robbery in the second degree, the Court cannot conclude that no reasonable court could have held that "[t]he evidence was also legally sufficient to demonstrate a 'physical injury,'" *see Arroyo*, 177 N.Y.S.3d at 916.[14]

The Petition, ECF No. 1, is denied.

---

[14] Although Mr. Portillo's testimony was sufficient on its own to defeat the Petition here, as reflected above, Mr. Portillo's testimony was corroborated in significant part by a variety of other evidence.

## CONCLUSION

For the reasons set forth above, the Petition, ECF No. 1, is DENIED.

The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner, however, has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment, close this case, and mail a copy of this Order to Petitioner.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: October 28, 2026
Brooklyn, New York